**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| THE HEALING CHAIR, INC., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:22-CV-327 SRW |
| ) | |
| LOGAN LOGAN & WATSON, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Petition (ECF No. 4). The motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). For the following reasons, Defendants' Motion will be granted; however, Plaintiff will be granted twenty-one days to file an amended petition.

**I.    BACKGROUND**

Plaintiff The Healing Chair, Inc. filed suit against Defendants Logan Logan & Watson, L.C. and Andrew Logan in the Circuit Court of St. Louis County alleging Defendants committed legal malpractice when they drafted new bylaws that allowed an outside group to take control of The Healing Chair and damage its mission. Defendants removed the matter to this Court and now seek dismissal of the Petition.

For purposes of considering this motion, the Court accepts the following facts as alleged in the Petition as true:

The Healing Chair is a nonprofit corporation, and Carol Mullenix is the founder, sole member, and president of The Healing Chair. In 2010, Mullenix was diagnosed with breast

1

cancer and underwent a bilateral mastectomy. During her recovery, severe pain prevented her from getting into a comfortable position. Two friends bought her an electric lift chair which made it easier for her to rest and raise herself to a standing position. Mullenix credits the lift chair as one of the keys to her recovery.

In 2013, Mullenix filed Articles of Incorporation with the Missouri Secretary of State creating The Healing Chair to provide similar electronic lift chairs to other breast cancer survivors. The Healing Chair's mission was, and remains, supporting women fighting breast cancer by raising funds for, among other things, purchasing electronic "healing chairs" which are provided to breast cancer survivors for in-home healing. At the time, Mullenix also adopted bylaws and created the initial board of directors. The initial board included her husband, Gregory Mullenix, and Molly and Charlie Vitale. These directors designated Mullenix as The Healing Chair's president, and her husband as secretary.

In 2015, Mollie and Charlie Vitale left the board. Mullenix and her husband appointed Thomas Niemann to fill one of the vacancies. The remaining vacancy has never been filled. During this period, The Healing Chair applied for and was granted status as a 501(c)(3) tax-exempt charitable organization. It also began to establish a presence in Texas, Arkansas, Maryland, and Minnesota. Amy Taitt contacted Mullenix and encouraged her to also establish a presence in Kansas City, Missouri. Taitt indicated she and a group of friends, who she identified as Janette Slusher and Marcia Maroney ("the KC group"), were impressed with The Healing Chair and its mission. Mullenix agreed to allow the KC group to volunteer their time to create a presence in Kansas City, Missouri and Wichita, Kansas. This included promoting The Healing Chair in those communities, collecting donations, acquiring chairs, and lending those chairs to women in need.

2

As The Healing Chair expanded into other cities and its presence in Kansas City grew, the KC group began to seek more involvement in and control of The Healing Chair. Mullenix and the other members of the board considered this, along with The Healing Chair's legal counsel, Niemann. The Healing Chair's board was open to the idea of the KC group, as well as other volunteers, expanding their roles but wanted to ensure these individuals could not take overall control from Mullenix or force her out. Prior to inviting the KC group into management roles, in July 2016, Mullenix sought to protect The Healing Chair's name by filing a trademark application with the U.S. Patent and Trademark Office for the name "The Healing Chair." The trademark was approved and registered in August 2017.

Mullenix also asked Niemann to review The Healing Chair's corporate documents to ensure management control would remain with Mullenix. In March 2017, the board approved The Healing Chair's First Amended and Restated Articles of Incorporation and First Amended and Restated Bylaws. These documents authorized The Healing Chair to have members and designated Mullenix as the sole member. The Healing Chair has no other nonprofit members. Unbeknownst to Mullenix and the other directors, the KC group also sought legal advice from Defendants in connection with their decision to volunteer for The Healing Chair.

Without disclosing their relationship with Defendant Andrew Logan, the KC group invited Mullenix to meet with them and Logan in late 2017, to discuss The Healing Chair's possible engagement of Defendants, who were held out to Mullenix and The Healing Chair as experts in Missouri nonprofit law. Defendants were to undertake a comprehensive review of The Healing Chair's organizational structure, governing documents, and state filings and then propose changes to ensure The Healing Chair was following applicable laws. Mullenix agreed to

3

retain Defendants on behalf of The Healing Chair to perform a comprehensive review, recommend and clearly explain any changes, and prepare the documents recommended.

Defendants did not ask Mullenix or Niemann, who Logan knew was The Healing Chair's long-standing attorney, for a copy of The Healing Chair's then existing Bylaws. Defendants made no effort to reconcile The Healing Chair's formal public filings that identified Mullenix as president, Gregory Mullenix as secretary, and The Healing Chair's board of directors with statements made by the KC group that they were duly and lawfully elected directors and/or officers of The Healing Chair, or could otherwise serve as officers and/or directors. Defendants also did not ask Mullenix or Niemann to confirm if The Healing Chair had appointed any members.

Without having performed a comprehensive review of all of The Healing Chair's organizing documents, in November 2017, Logan invited the KC group and Mullenix to a meeting at his office in Kansas City where he purported to convene what he described as a meeting of the directors of The Healing Chair for the purpose of approving a document he had prepared and titled, "Bylaws of The Healing Chair, Inc." Prior to executing the new bylaws, Mullenix privately conferred with Logan to confirm there was nothing in the bylaws that would allow the KC group to wrest control of The Healing Chair from her or force her out. Logan assured her there was no way for the KC group to remove her or oust her from management. In reliance on this representation, Mullenix and the KC group executed the bylaws purportedly as The Healing Chair's directors. Just three months before, The Healing Chair had filed its August 2017 Annual Registration report which identified Mullenix, Gregory Mullenix, and Niemann as directors.

Over the next 18 months, conflicts between the KC group and Mullenix developed over the future direction of The Healing Chair. Mullenix wanted to continue to operate as an all-volunteer organization while the KC group wanted to grow the nonprofit and use increased donations to pay themselves six-figure salaries. In June 2019, the KC group threatened to remove Mullenix from management pursuant to the terms of the new bylaws. Distraught, Mullenix contacted Niemann to advise him of the developments. When Niemann contacted Logan in June 2019 to request copies of all documents in his possession concerning The Healing Chair, Logan refused citing privilege, even though Mullenix, as The Healing Chair's president, had approved release of the documents to Niemann.

When asked to explain how he had concluded that members of the KC group were lawful directors and authorized to take corporate action on behalf of The Healing Chair, Defendant Logan refused to answer. Instead, he responded by email stating, "Our firm was engaged by all these individuals and acted in good faith to address organizational governance matters in October 2017." The Healing Chair's board learned for the first time Defendants had undertaken to prepare new bylaws purporting to name the KC group as officers and directors without any consultation with or effort to make inquiry of the existing board or The Healing Chair's counsel, Niemann.

The Healing Chair had no remedy but to file suit against the KC group to obtain a declaratory judgment stating the new bylaws were improperly and unlawfully adopted and none of the KC group were officers or directors of The Healing Chair. The KC group pursued a "scorched earth" defense strategy, making false allegations and intentionally interfering with the operations of The Healing Chair. This included an effort to have the Missouri Attorney General act against The Healing Chair after it purchased an Apple MacBook for Mullenix to use in its

5

operations, refusing to relinquish control of The Healing Chair's website and social media accounts, misdirecting emails and other inquiries from prospective donors and breast cancer survivors, and claiming ownership of The Healing Chair's funds on deposit in a Kansas City bank account they had opened in The Healing Chair's name. The KC group also filed a discovery motion misrepresenting that The Healing Chair was refusing to permit payment of company debts when The Healing Chair had merely asked the KC group to provide copies of invoices they had refused to hand over. Consequently, the court appointed a receiver, *sua sponte*. At the urging of the KC group's counsel, the receiver declared his intention to sell all of The Healing Chair's assets and "shut the company down." He later revised the plan to split the assets between Mullenix and the KC group.

In the interim, the KC group started their own nonprofit corporation, now known as "Peace Out Cancer," with a similar mission to The Healing Chair's. However, the KC group still refused to relinquish whatever rights they believed they had to control The Healing Chair, continued their efforts to pressure the receiver to award their new nonprofit half of The Healing Chair's assets, and continued to damage The Healing Chair's business and its mission by refusing to relinquish control of The Healing Chair's website and other social media accounts. The Healing Chair could not operate while a receiver was in place, but the KC group could freely operate their Peace Out Cancer nonprofit while The Healing Chair was crippled by their actions.

The Healing Chair had no choice but to file a second lawsuit against the KC group for breach of fiduciary duties they owed to The Healing Chair as purported officers and directors of The Healing Chair. Finally, the KC group came to the settlement table and disposed of both lawsuits, which was necessary to allow The Healing Chair to rebuild from the damage done to it

6

by the KC group. The Healing Chair then filed this lawsuit against Defendants for legal malpractice.

In its legal malpractice claim, The Healing Chair alleges Defendants breached their duty to The Healing Chair by:

a. failing to disclose a conflict of interest arising from its prior representation of the KC group in matters related to The Healing Chair;

b. failing to perform an investigation into The Healing Chair's organizational history to confirm The Healing Chair was acting in compliance with applicable laws;

c. failing to review and disclose the contents of documents in Defendants' possession that revealed The Healing Chair already had a board of directors that did not include anyone in the KC group;

d. failing to review and disclose the contents of documents in Defendants' possession confirming The Healing Chair had previously adopted bylaws;

e. failing to inquire into or resolve discrepancies between what the KC group told Defendants concerning their management roles in The Healing Chair and what The Healing Chair's organizing documents and publicly available state records stated;

f. failing to make any effort to contact The Healing Chair's long-standing St. Louis counsel when Defendants were unable to obtain The Healing Chair's bylaws;

g. falsely assuring and representing to The Healing Chair the new bylaws did not provide a mechanism for the KC group to remove Mullenix from overall management and control of The Healing Chair;

h. failing to exercise reasonable care in preparing the new bylaws by:

   i. Not including any recitals confirming the record of The Healing Chair's formation and organization, including its adoption of prior bylaws;

   ii. Misidentifying The Healing Chair's place of business in the preamble as "the City of St. Louis, County of St. Louis";

   iii. Providing in Article II that The Healing Chair could not have members even though The Healing Chair's articles of incorporation, amended and restated four months previously, expressly provide The Healing Chair would have members;

7

 iv. Including the following provisions about members, even though it states there will be no members:

   A. in Article III, Section 2, a director of the corporation need not be a member;
   B. in Article III, Section 4, directors of the corporation would serve until the next meeting of members;
   C. in Article III, Section 6, directors of the corporation could be removed without cause at a meeting of the members, upon notice to the members;
   D. in Article IV, Section 5, the president of The Healing Chair would preside at all meetings of the members;
   E. in Article IV, Section 8, the secretary of The Healing Chair would keep minutes of the meetings of members;
   F. in Article V, Section 3, each member of any board committee would serve until the next annual meeting of the members;
   G. in Article VII, the corporation shall keep minutes of the proceedings of its members and records of names and addresses of members entitled to vote;

 v. Providing in Article III, Section 2, the incorporator would fix the number of directors when the Annual Registration Reports and other documents on file with the Missouri Secretary of State showed The Healing Chair already had a board consisting of three directors;

 vi. Providing in Article III, Section 4, directors of the corporation would be elected at meetings of the members, while Article III, Section 3 provided directors would be elected at meetings of the directors;

 vii. Providing in Article III, Section 4, vacancies in director positions would be filled at the next meeting of the members, while Article III, Section 5 provided vacancies would be filled by the board of directors;

 viii. Providing in Article IV, Section 2, officers will be elected annually by the board at the regular annual meeting of the board even though Article III, Section 9 provides separately for an annual, regular, and special meeting with different notice requirements;

 ix. Not including any provision limiting The Healing Chair's purpose to the exempt purposes set forth in Section 501(c)(3) of the Internal Revenue Code;

 x. Not including any provision stating The Healing Chair's assets must be permanently dedicated to exempt purposes under Section 501(c)(3) of the Internal revenue Code and upon dissolution, the assets must be distributed only for such exempt purposes, or to the federal, state, or local government for a public purpose;

      xi.    Not providing a conflict-of-interest provision despite Defendants' knowledge the KC group wanted to pay themselves six-figure salaries from tax-exempt funds received by The Healing Chair, which Defendants allowed in Article II, Section 11 via vote of a majority of directors.

The Healing Chair alleges it was damaged as a result of Defendants' negligence because it had to forgo assets, incur costs to pay a receiver, incur attorney's fees and other costs, and lose donation opportunities. Defendants seek dismissal of the claims asserting The Healing Chair has not properly alleged Defendants proximately caused the harm The Healing Chair incurred.

## II.  STANDARD

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555 & n.3; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2).

## III.   DISCUSSION

In their motion to dismiss, Defendants assert The Healing Chair has not pled any facts establishing "but for" or proximate causation. According to Defendants, The Healing Chair incurred damages because its president, as admitted by The Healing Chair, approved and executed the new bylaws, and a receiver was appointed *sua sponte* by the state court, as a result of the KC group's misrepresentations and scorched earth defense strategy. Defendants argue the Petition's allegations do not claim Defendants' alleged negligence, rather than the actions of Mullenix, the KC group, and the state court, caused The Healing Chair to have no choice but file a lawsuit or sell assets. Instead, the allegations show other actors and events caused the alleged damages.

To establish a legal malpractice action in Missouri, a plaintiff must show "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; and (4) damages to plaintiff." *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. 1997). In legal malpractice cases, causation in fact "requires proof that, but for the attorney's negligence, the result would have been different." *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 562 (Mo. 2014). Proximate causation requires a plaintiff to show the injury was "a reasonable and probable consequence of the defendant's negligence." *Id*. In legal malpractice cases, the two types of causation often collapse into one another. "By proving that the result of the underlying proceeding would have been different but for the attorney's negligence, the plaintiff also proves that the damages – the difference between what the result would have been and what it was – were the reasonable and probable consequence of the defendant's negligence." *Id*.

10

Whether proximate cause exists usually raises a jury question. *SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, 494 S.W.3d 537, 546 (Mo. Ct. App. 2016) (citing *Coin Acceptors, Inc. v. Haverstock, Garrett & Roberts LLP,* 405 S.W.3d 19, 24 (Mo. Ct. App. 2013)). The issue presented in this motion to dismiss is only whether The Healing Chair adequately alleged the issue of proximate cause. The Court finds The Healing Chair failed to properly allege causation. The Petition does not specifically allege "but for" or proximate cause. It only alleges The Healing Chair has been damaged "as a result of Defendants' negligence." (ECF No. 6 at 15). However, The Healing Chair does not state how the outcome would have been different had Defendant not been negligent.

The Healing Chair includes conclusory allegations but no facts to support those conclusions. For example, The Healing Chair alleges Defendants did not ask Mullenix or Niemann for a copy of The Healing Chair's then-existing bylaws. But there is no accompanying allegation stating how The Healing Chair's injuries would have been avoided had Defendants asked for a copy of the then-existing bylaws. In another example, the Petition alleges Defendants failed to disclose a conflict of interest, but it does not also include an allegation The Healing Chair would not have hired Defendants had they disclosed the conflict of interest.

Additionally, the Petition does not identify how the new bylaws Defendants created allowed the KC group to assert the control it allegedly did. Nor does it include any allegations stating how the bylaws, if written differently, could have prevented the KC group from asserting control. *See SKMDV Holdings, Inc.*, 494 S.W.3d at 547 (To establish causation, plaintiff must show that but for the attorney's negligence in drafting the agreement, the plaintiff would be better off and have an agreement more favorable to the plaintiff); *see also Nail*, 436 S.W.3d at 566, n.10 (same). The Petition also alleges a number of relatively minor mistakes which have no

11

bearing on the KC group's actions, such as the allegation the new bylaws misidentify The Healing Chair's place of business. The Petition alleges various ways in which Defendants were negligent but does not take the final step of showing how those actions resulted in The Healing Chair's injuries. Instead, it expects the Court to imply what would have happened had Defendants not been negligent. This is not enough; The Healing Chair must allege each and every element of its cause of action, including causation.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Petition (ECF No. 4) is **GRANTED**. Plaintiff has twenty-one (21) days from the date of this order to file an amended complaint. If Plaintiff chooses not to file an amended complaint, this matter will be DISMISSED, without prejudice.

So Ordered this 10th day of May, 2022.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**