**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE HEALING CHAIR, INC., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-CV-327 SRW |
| | ) | |
| LOGAN LOGAN & WATSON, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 18. The motion is fully briefed and ready for disposition. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). For the following reasons, the Court will dismiss Count I of Plaintiff's First Amended Complaint, and grant in part, and deny, in part, the motion to dismiss as to Counts II & III.

## I.      BACKGROUND

Plaintiff The Healing Chair, Inc. filed a lawsuit against Defendants Logan Logan & Watson and Andrew V. Logan in the Circuit Court of St. Louis County, alleging Defendants committed legal malpractice when they negligently drafted new bylaws, which allowed an outside group to take significant control of The Healing Chair, Inc. and damage its mission. Defendants removed the matter to this Court. The Court granted Defendants' previous Motion to Dismiss but also granted Plaintiff twenty-one days to submit an amended petition, which was filed on May 27, 2022. Defendants have now filed another motion to dismiss. For purposes of

1

considering this motion, the Court accepts the following facts as alleged in the First Amended Petition as true:

Plaintiff The Healing Chair, Inc. ("THC") is a Missouri nonprofit corporation, and Carol Mullenix is the founder, sole member, and president. In 2010, Mullenix was diagnosed with breast cancer and underwent a bilateral mastectomy. To assist in her painful recovery, two friends bought her an electric lift chair, which made it easier for her to rest and raise herself into a standing position. Mullenix credits the lift chair as a key to her recovery. After providing lift chairs to other breast cancer survivors, Mullenix decided to create THC. The mission of THC is to support women fighting breast cancer by raising funds to purchase healing chairs which are then distributed to breast cancer survivors for at-home healing. In 2013, Mullenix filed Articles of Incorporation with the Missouri Secretary of State, adopted initial bylaws for THC, and established the initial THC Board, appointing herself, her husband, Gregory Mullenix, and her friends Molly and Charlie Vitale as initial Directors. The initial Directors then designated Mullenix as THC's President and her husband as secretary. The Vitales left the THC Board in 2015 and were replaced by Director-appointed Thomas Niemann. The other vacancy was never filled. During this time, THC was granted Section 501(c)(3) status as a tax-exempt charitable organization and began establishing its presence in other states, including Texas, Arkansas, and Maryland.

Around 2015, Amy Taitt contacted Mullenix. Taitt and an interested group wanted to help THC establish a presence in the Kansas City, Missouri and Wichita, Kansas areas. The interested group consisted of Taitt, Janette Slusher, and Marcia Maroney ("the KC Group"). Mullenix allowed the KC Group to volunteer their time to create a presence for THC in these

areas by promoting THC, collecting donations on behalf of THC, acquiring lift chairs for THC, and lending chairs to breast cancer survivors in those areas.

As THC's presence in Kansas City grew, the KC Group sought greater involvement and control of THC. Mullenix and other members of the board, including THC's legal counsel, Director Niemann, considered this. THC was open to expanding the role of the KC Group but wanted to ensure they could not take overall control of THC if invited into management at any level. Prior to deciding to invite the KC Group or other THC volunteers into management roles, Mullenix sought to protect THC's name and filed a trademark application for the name "The Healing Chair" with the U.S. Patent and Trademark Office, which was approved and registered in 2017. Mullenix also asked Niemann to review THC corporate documents and ensure management and control would remain with her. In March 2017, the Board of Directors approved THC's First Amended and Restated Articles of Incorporation and the First Amended and Restated Bylaws, which designated Mullenix as THC's sole member. THC has no other nonprofit members.

Unbeknownst to Mullenix and the other THC Directors, the KC Group sought legal advice from Defendants Andrew Logan and his firm, Logan Logan & Watson, regarding any decision-making authority and control they may have as volunteers with THC. Without disclosing their attorney-client relationship to THC or Mullenix, the KC Group invited her to meet with them and Logan in late 2017 to discuss engaging Logan to review THC's organizational structure, governing documents, and state filings, and allow Logan to propose changes that would ensure THC was operating in full compliance with applicable laws. Mullenix agreed that THC would retain Defendants to perform the review and fully explain any changes they might propose to make certain THC followed all applicable laws while also ensuring

3

Mullenix would remain in control of THC. During this process, Defendants did not ask Mullenix or Niemann for a copy of THC's then-existing bylaws.

On November 27, 2017, Logan invited Mullenix and the KC Group to meet for what he described as a meeting of the directors of THC for the purpose of approving a document titled "Bylaws of The Healing Chair, Inc." Prior to executing the new bylaws, Mullenix conferred privately with Logan to confirm there was nothing in the new bylaws which would allow the KC Group to take control over THC or force Mullenix out of THC. Logan assured Mullenix the KC Group could not take control pursuant to the new bylaws. Logan did not disclose his or the law firm's representation of the KC Group to Mullenix or THC. In reliance on Logan's representations, Mullenix and the KC Group executed the new bylaws, purportedly as THC's directors, despite Logan never confirming the KC Group was authorized as directors under the existing Amended and Restated Articles of Incorporation or Amended and Restated Bylaws. Three months before, THC filed its 2017 Annual Registration Report identifying THC Directors as Mullenix, Gregory Mullenix, and Thomas Niemann.

Over the following eighteen months, conflicts developed between the KC Group and Mullenix over the future of THC. While Mullenix wanted to continue operating THC as an all-volunteer organization, the KC Group wanted to grow the nonprofit corporation so that the increased donations could be used to pay themselves six-figure salaries. When the matter came to a head in June 2019, the KC Group threatened to remove Mullenix from management pursuant to the new bylaws constructed by Defendants. Distraught, Mullenix contacted Niemann to advise him of the developments, who then contacted Logan to request copies of all the documents in his possession concerning THC, including those drafted by Defendants. Logan refused, citing attorney-client privilege, even though Mullenix had approved of the release of the documents to

4

Niemann. Logan also refused to answer how he concluded members of the KC Group were

lawful directors of THC. Instead, he responded by email, stating, "Our firm was engaged by all

these individuals and acted in good faith to address organizational governance matters in October

2017." ECF No. 15 at 10. THC's "duly and lawfully elected Board" then learned for the first

time that Defendants had prepared new bylaws for THC purporting to name the KC Group as

officers and directors of THC without any consultation or effort to inquire into THC's "actual

Board." *Id.*

THC filed suit against the KC Group to obtain a declaratory judgment on the grounds that

the new bylaws were improperly and unlawfully adopted and, as a result, none of the members of

the KC Group were officers or directors of THC. The KC Group pursued a "scorched earth"

defense and used the new bylaws to interfere with THC's operations, including involving the

Missouri Attorney General in an action against THC after it purchased a computer for Mullenix's

use in its operations; refusing to relinquish control over the THC website and social media

accounts; misdirecting emails and other inquiries from prospective donors and breast cancer

survivors; and claiming ownership of THC funds on deposit in a Kansas City bank account they

opened in THC's name without THC's knowledge. The KC Group also filed a discovery motion

misrepresenting facts, namely that THC refused to permit payment of company debts, even

though THC asked the KC Group to provide copies of invoices which they refused to provide.

As a result, the court appointed a receiver, *sua sponte*. At the urging of the KC Group's counsel,

the receiver declared his intention to sell all of THC's assets and "shut the company down." He

later revised this plan and decided to split THC's assets between Mullenix and the KC Group.

In the interim, the KC Group started their own nonprofit corporation, "Peace Out

Cancer," which has a mission nearly identical to THC's. Despite forming the new nonprofit, the

KC Group refused to relinquish rights to control THC, continued to pressure the receiver to award their new nonprofit half of THC's assets, and damaged THC's business and mission by refusing to relinquish control of THC's website and other social media accounts. The KC Group claimed they were able to do this pursuant to the new bylaws. THC was unable to operate while the receiver was in place, and the KC Group refused to resign despite freely operating Peace Out Cancer.

Faced with certain demise and unable to operate, THC filed a second suit against the KC Group, alleging breach of fiduciary duties they would have owed to THC as officers and directors of THC, the validity of which THC was still contesting. THC and the KC Group settled both lawsuits.

THC then filed this action in state court in February 2022, and Defendants removed the case to federal court in March of 2022. The First Amended Complaint asserts three counts: legal malpractice, fraudulent misrepresentation, and negligent misrepresentation. Defendants seek to dismiss Plaintiff's First Amended Complaint.

In Count I, THC alleges Defendants breached their duty to exercise reasonable care in rendering legal services and their duty of absolute loyalty over all others, including but not limited to the KC Group by:

a.  Failing to disclose a conflict of interest arising from its prior representation of the KC Group in matters related to the level of control the KC Group would have over THC and to obtain waivers thereof;
b.  Failing to perform the investigation they represented they were performing into THC's organizational history to confirm THC was acting in compliance with applicable laws;
c.  Failing to review or reviewing and failing to disclose contents of documents in Defendants' possession, which revealed THC already had a board of directors, none of whom were members of the KC Group;
d.  Failing to review and disclose contents of documents in their possession confirming THC had previously adopted bylaws;

    e.   Failing to inquire into or resolve discrepancies between what the KC Group told Defendants concerning their management roles in THC and what THC's organizing documents and publicly available state records stated;

    f.   Failing to contact THC's long-standing St. Louis counsel if or when Defendants were unable to obtain THC's existing bylaws;

    g.   Falsely assuring and representing to THC that the new bylaws did not provide a mechanism for the KC Group to remove Mullenix from overall management and control of THC; and

    h.   Failing to draft the new bylaws in furtherance of THC's goal of remaining under the control of Mullenix and failing to draft the new bylaws per their representation.

Defendants' deficient representation and callousness towards the review of THC's corporate structure is evidenced by a series of errors and omissions in the new bylaws, including but not limited to:

1. No recitals to the formation, organization, or previous bylaws;
2. Misidentification of the location of THC's place of business as "the City of St. Louis, County of St. Louis," even though the City of St. Louis is not in St. Louis County.
3. Article II states THC could not have members, even though the Articles of Incorporation provides the THC would have members;
4. Article III, Section 2, states that a director of the corporation need not be a member, even though the new bylaws stated there would be no members;
5. Article III, Section 2, provides the incorporator would fix the number of directors, even though THC already had a Board with three directors - none of whom were members of the KC Group;
6. Article III, Section 4, states that the directors would serve until the next meeting of members, even though there would be no members;
7. Article III, Section 4, provides that the directors would be elected at meetings of the members, while Article III, Section 3 provided the directors would be elected at meetings of the directors;
8. Article III, Section 4, states that vacancies in director positions would be filled at the next meeting of the members, while Article III, Section 5 provided vacancies would be filled by the Board of Directors;
9. Article III, Section 6, provides that the directors of the corporation could be removed without cause at a meeting of the members, upon notice to the members, even though there would be no members;
10. Article IV, Section 2, states officers will be elected annually by the board at the "regular annual meeting of the Board," even though Article III, Section 9 provides separately for annual, regular, and special meetings, with different notice requirements;
11. Article IV, Section 5, provides that the president of THC would preside at all meetings of the members, even though there would be no members;
12. Article IV, Section 8, directs the secretary of THC to keep minutes of the meetings of members, even though there would be no members;

13. Article V, Section 3, states each member of any Board committee would serve until the next annual meeting of the members, even though there would be no members;

14. Article VII, requires the corporation to keep minutes of the proceedings of its members, record the names and addresses of members entitled to vote, even though there would be no members;

15. The new bylaws do not limit the corporation's purposes to exempt purposes set forth in Section 501(c)(3) of the Internal Revenue Code;

16. The new bylaws do not provide that THC's assets must be permanently dedicated to exempt purposes under Section 501(c)(3), and that upon dissolution, THC's assets must be distributed only for such exempt purposes or to the federal, state or local government for a public purpose;

17. The new bylaws failed to provide for a conflict-of-interest provision, even though such provisions are customary and recommended to protect tax-exempt corporations; and

18. The new bylaws failed to provide a means to remove or replace directors, despite the stated requirement that THC remain under Mullenix's control.

See ECF No. 15 at 13-18.

Additionally, THC complains Defendants breached their duty to fully and properly explain the legal effect of the new bylaws to THC, including the legal significance of the KC Group signing the bylaws at a meeting purporting to be a meeting of the directors. As a result, THC believed the volunteers could not use the bylaws to remove Mullenix or wrest control or management of THC from Mullenix.

As a direct and proximate result of Defendants' negligence, the KC Group used the new, deficient, and improper bylaws as the basis of the KC Group's claim of directorships, which caused damage to THC by drawing it into protracted litigation, the loss of THC's assets, the appointment of a receiver, the loss of significant donation opportunities, and attorney's fees, receiver's fees, and costs. Moreover, due to Defendants' negligence, THC was unable to remove or replace the KC Group directors. Absent Defendants' services, the KC Group could not have claimed directorship, and THC would not have suffered the previously stated injuries.

In Count II, THC first alleges fraudulent misrepresentation based on Defendants' representations that they were expert Missouri nonprofit corporation lawyers, with a keen eye for

detail, and would conduct a thorough review of all THC's then-existing governing documents to ensure it comported with applicable laws. Defendants made such representations despite knowing they assigned THC's matter to an inexperienced attorney and did not intend to conduct a thorough review of the then-existing documents for the sole purpose of inducing THC to retain Defendants. THC claims it had a right to rely on and did rely on Defendants' misrepresentations and was unaware of their falsity at the time they were made. Second, THC alleges it had no reason to believe Defendants represented the KC Group, an obvious conflict of interest, nor was this information reasonably available to THC or discoverable by ordinary diligence. THC would not have retained Defendants had they disclosed their representation of the KC Group. Thus, THC claims Defendants' silence, when they had a duty to speak, amounts to a representation made with the intent to induce THC to retain Defendants. THC had the right to rely and did rely on the misrepresentations and the nondisclosure of Defendants' conflict of interest. As a direct and proximate result of the misrepresentations and nondisclosure, THC paid Defendants significant funds to provide legal services despite never receiving the agreed-upon services and additional losses based on Defendants' misrepresentations and nondisclosures.

In Count III, THC alleges Defendants' actions amount to negligent misrepresentation. First, THC asserts Defendants falsely represented that they were expert Missouri nonprofit corporation lawyers and would conduct a thorough review of all of THC's then-existing governing documents. Second, Defendants falsely represented that the new bylaws would ensure Mullenix would remain in control of THC. Third, the Defendants' failed to disclose their obvious conflict of interest created by their representation of the KC Group. These representation and nondisclosures were material and made in the ordinary course of Defendants' business. THC reasonably relied on these representations and nondisclosures, and Defendants failed to exercise

reasonable care in obtaining, analyzing, or communicating this information. Finally, THC contends that as a direct and proximate result of Defendants' negligence, THC was damaged and suffered pecuniary loss.

## II.   STANDARD

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the plaintiff must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555 & n.3; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show the pleader is entitled to relief. *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2).

## I.      DISCUSSION

### A.  Count I: Legal Malpractice

Defendants argue this Court should dismiss THC's legal malpractice claim because it is devoid of facts asserting a causal connection between Defendants' negligence and the damages incurred. Defendants assert that intervening actors or events eclipse Defendants' purported negligence and are the proximate cause of THC's harm. These intervening actors or events could include the subsequent actions of the KC Group, the state court's appointment of a receiver, or possibly the actions of Ms. Mullenix. Moreover, Defendants argue THC does not state how the negligently drafted and inconsistent bylaws allowed the KC Group to use the new bylaws to manipulate the receiver or take control of THC.

In a diversity jurisdiction action, the Court applies state law to predict how the highest court in Missouri would resolve the issues; thus, the instant legal malpractice case will be decided pursuant to Missouri law. *See Rosemann v. Sigillito*, 785 F.3d 1175, 1178 (8th Cir. 2015) (citing *Payne v. Grinnell Mut. Reinsurance Co.*, 716 F.3d 487, 490 (8th Cir. 2013)) ("The district court reviewed the law on professional negligence in Missouri, which governs in this diversity suit."). To establish legal malpractice in Missouri, THC must show "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; and (4) damages to plaintiff." *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. 1997). In legal malpractice cases, causation in fact "requires proof that, but for the attorney's negligence, the result would have been different." *Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 562 (Mo. 2014). Proximate causation requires a plaintiff to show the injury was "a reasonable and probable consequence of the defendant's negligence." *Id*. In legal malpractice cases, the two types of causation often collapse into one another:

> By proving that the result of the underlying proceeding would have been different but for the attorney's negligence, the plaintiff also proves that the damages – the difference between what the result would have been and what it was – were the reasonable and probable consequence of the defendant's negligence.

*Id*. "The causal connection cannot be based on speculation or conjecture." *Id.* at 563 (citing *Stanley v. City of Independence*, 995 S.W.2d 485, 488 (Mo. 1999)). Whether proximate cause exists usually raises a jury question. *SKMDV Holdings, Inc. v. Green Jacobson, P.C.*, 494 S.W.3d 537, 546 (Mo. Ct. App. 2016) (citing *Coin Acceptors, Inc. v. Haverstock, Garrett & Roberts LLP,* 405 S.W.3d 19, 24 (Mo. Ct. App. 2013)).

The doctrine of intervening cause also applies in attorney malpractice cases. *See Faulkner v. Ensz*, 109 F.3d 474, 476 (8th Cir. 1997). "'An intervening cause is a new and independent force which interrupts the chain of events initiated by the defendant's negligence in such a significant manner as to become the direct and proximate cause of the plaintiff's damages.'" *Id.* at 476-77 (quoting *Rodgers v. Czamanske,* 862 S.W.2d 453, 458 (Mo. Ct. App. 1993)). Although a jury typically decides questions of proximate cause, the question is one for a court when the "evidence reveals an intervening cause that eclipses the defendant's role in the plaintiff's injury." *Coin Acceptors, Inc.*, 405 S.W.3d at 24 (citing *Tomkins v. Cervantes*, 917 S.W.2d 186, 190 (Mo. Ct. App. 1996)) (internal citations omitted). As an example, Missouri courts have found subsequent attorneys' actions may amount to an intervening cause. *See Viehweg v. Mello*, 5 F. Supp. 2d 752, 760 (E.D. Mo. 1998), *aff'd*, 198 F.3d 252 (8th Cir. 1999) (citing *Rodgers*, 862 S.W.2d at 458). Missouri courts have also found judicial analysis may constitute an intervening cause. *See Coin Acceptors, Inc.*, 405 S.W.3d at 24.

To show proximate cause between Defendants' conduct and THC's injury, THC must show how Defendants' negligent review of the corporate documents and construction of the bylaws caused the KC Group to use the new bylaws to claim directorships, gain some level of

control over THC, and attempt to remove Mullenix. In the First Amended Complaint, THC alleges

> as a direct and proximate result of the Defendants' negligence and callous disregard for the interests of THC in the legal services provided to THC for a thorough review of its corporate structure and governing documents to ensure it was compliant with all laws governing Missouri nonprofit corporations, THC was damaged in that the KC Group used the wholly deficient and improper Logan Bylaws, improperly and negligently prepared by the Defendants, as the basis of their claim that they were directors of THC which resulted in THC being in protracted litigation, the loss of THC's assets, the appointment of a receiver, and the loss of significant donation opportunities.

ECF No. 15 at 18. THC claims it had no means to remove or replace alleged directors and, absent Defendants' deficient and negligent legal services, the KC Group could not have claimed directorship. *Id.* at 19. However, the Court finds these statements do not sufficiently show a causal connection between Defendants' alleged negligence and how the KC Group used the bylaws to damage THC. Rather the First Amended Complaint states one caused the other in a conclusory fashion. THC also does not allege what counsel should have done differently to avoid the alleged injury.

In *Steward v. Goetz*, the plaintiff alleged the defendant failed to advise the plaintiff that the inventory in a sale was inaccurate, changed the terms of the contract to shift sole responsibility of the inventory shortage onto the plaintiff without disclosing the change, and failed to disclose a conflict of interest in representing both the plaintiff and another party to the agreement. 945 S.W.2d 520, 532 (Mo. Ct. App. 1997). The court found the plaintiff failed to make a submissible claim because she did not supply evidence in the record as to what new counsel would have done differently or how she would have been able to contract for a better deal without paying for the missing inventory. *Id; see also Bryant v. Bryan Cave, LLP*, 400 S.W.3d 325, 343 (Mo. Ct. App. 2013) (lack of causation where the record failed to show that the original disputing parties would have eventually agreed to payment terms providing for a fixed-

amount payment); *SMKV Holdings, Inc. v.*, 494 S.W.3d at 547 (plaintiff supplied sufficient evidence by showing letter of intent between buyer and seller agreeing to more favorable outcome for plaintiff and finding plaintiff demonstrated how omission in contract drafted by defendant reduced total value of the deal and how defendant knew he had omitted clause but assumed it was covered in an exhibit). THC does not allege what Defendants or new counsel could have done differently or how these differences would have impacted the outcome of the various incidents which occurred after the creation of the new bylaws.

THC claims the KC Group used Defendants' negligently prepared bylaws as the basis for their claim of directorships over THC, resulting in THC's injuries; however, THC does not show how the KC Group was able to use the new bylaws to claim directorships. Instead, in the First Amended Complaint, THC offers a lengthy list of errors in the bylaws demonstrating Defendants' "callousness" towards the review of THC's corporate structure. ECF No. 15 at 15. Meanwhile, as Defendants point out, the new bylaws do not establish the KC Group as directors, give them any power or authority to act for THC, or the authority to attempt to remove Mullenix from THC. Section 3 of the new bylaws, states:

> The initial Board of Directors shall be comprised of those directors selected by the incorporator. Thereafter, Directors shall be elected at a meeting of the Board of Directors by an affirmative vote of a majority of the Directors, either in person or by proxy, cast at a meeting at which a quorum is present, and each shall continue in office until his successor is elected and qualified, or until his death, resignation or removal.

ECF No. 15-8 at 1. This provision requires a majority of THC's existing Board to approve any new directors. Thus, THC fails to allege how the new bylaws automatically establish anyone in the KC Group as directors, fails to allege how the new bylaws expressly grant any powers to the KC Group, and fails to allege how the new bylaws made it impossible to remove a director. The new bylaws also expressly provide THC with a means of removing directors from the board.

Specifically, Section 6 of the new bylaws provide the provision for the removal of directors. ECF No. 15-8 at 2.

Without alleging how Defendants' negligence in drafting the new bylaws proximately caused THC's future injuries, THC fails to properly allege causation. The Court must dismiss Count I of the First Amended Complaint for failure to state a claim upon which relief may be granted.[1]

### B.  Count II: Fraudulent Misrepresentation

In Count II, THC alleges Defendants made fraudulent misrepresentations by (1) claiming Defendants were "expert Missouri nonprofit corporation lawyers with keen eyes for detail," even though Andrew Logan was relatively inexperienced and had only been practicing law for two years; (2) claiming they would conduct a thorough review of all of THC's then existing governing documents, from formation to the present, to ensure that THC was in compliance with all laws governing Missouri nonprofit corporations, and ensure that THC was operating according to its goals, including having Mullenix remain in control of THC, even though Defendants had no intention of conducting a thorough review of THC's governing documents; and (3) failing to disclose Defendants' prior representation of the KC Group concerning "any decision-making authority and control they may have in connection with their decision to volunteer for THC," even though control of THC was a major concern for Mullenix and the directors. THC alleges as a direct and proximate result of its reliance on these material misrepresentations, it suffered damages, including the payment of funds for legal services,

---

[1] The Court is also concerned there may be intervening causes which would break the causal chain required to establish proximate cause between Defendants' alleged negligence in 2017 and the harms suffered by THC many months or years later. The Court need not make any findings on this issue as the Court finds Count I's failure to allege proximate cause demands the dismissal of Count I for failure to state a claim upon which relief may be granted.

additional damages paid to others to fix the issues as a result of the legal services provided by

Defendants, and fees and expenses associated with attempts to recover from Defendants'

fraudulent actions. *Id.* at 22.

Defendants argue the Court should dismiss Count II because THC has not pled sufficient

facts to show Defendants made false statements of facts which are actionable under Missouri

law. Defendants also argue the alleged statements that Defendants' were experts and would

review all of the existing governing documents were merely an expression of an opinion or

"puffing" and do not amount to actionable fraud. They also assert the KC Group's actions in

seeking advice from Defendants was not a conflict of interest under applicable Missouri Rules of

Professional Conduct. Lastly, Defendants assert THC does not allege specific facts as required

under the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

In order to establish fraudulent misrepresentation, Missouri courts require a plaintiff to

show,

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
> of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted
> on by the person in the manner reasonably contemplated; (6) the hearer's ignorance
> of the falsity of the representation; (7) the hearer's reliance on the representation
> being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent
> and proximately caused injury.

*Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 880 (Mo. 2015) (quoting *Renaissance*

*Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010)). "A plaintiff's failure

to establish any one of the essential elements of fraud is fatal to recovery." *Renaissance Leasing,*

*LLC*, 322 S.W.3d at 132 (citing *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 154

(Mo. 2007)). "Significantly, fraud imputes venality and corruption to the person charged with it,

and both reason and law require clear and convincing proof of it." *DiSalvo Props., LLC v. Hall*,

616 S.W.3d 502, 508 (Mo. Ct. App. 2020) (quoting *Dorsch v. Family Med., Inc.*, 159 S.W.3d

424, 432 (Mo. Ct. App. 2005)). As a result, THC will ultimately bear the burden to "substantially prove the misrepresentations that have been alleged." *Id.* (internal citation omitted).

Representations which "constitute mere expressions of opinion, or 'puffing'" are not actionable representations. *Midwest Printing, Inc. v. AM Int'l, Inc.*, 108 F.3d 168, 170 (8th Cir. 1997) (citing *Rich v. Eastman Kodak Co.*, 443 F. Supp. 32, 37 (E.D. Mo. 1977), *aff'd*, 583 F.2d 435 (8th Cir. 1978)); *see also McAlpine Co. v. Graham*, 320 S.W.2d 951, 955 (Mo. Ct. App. 1959) ("The representation that plaintiff's men were experts in the field and that the work would be done in an expert manner is not a representation which may form the basis of a claim of fraud."). "Representations such as these that compare the efficiency, economy or quality of one product to other products may not form the basis of a cause of action in fraud." *Midwest Printing, Inc.*, 108 F.3d at 171 (internal citations omitted).

In the First Amended Complaint, THC states Defendants, "affirmatively represented to THC that Attorney and the Firm were expert Missouri nonprofit corporation lawyers with keen eyes for details." ECF No. 15 at 20. The Court finds the representation regarding Defendants' expertise in Missouri nonprofit law or a keen eye for detail are expressions of opinion on the part of Defendants regarding the quality of their services and employees, which under Missouri law, does not arise to the level of an actionable fraud.

However, the representation that Defendants would conduct a thorough review of THC's governing documents, from formation to the present, is not a statement of opinion, but appears to be part of the terms of the work to be performed under the proposed attorney-client representation.[2] THC alleges Defendants intentionally lied when Defendants made this material representation, as they had no intention of conducting a thorough review of THC's existing

---

[2] The First Amended Complaint does not include or mention a written contract for services between THC and the Defendants.

governing documents. THC further alleges Defendants made the representations regarding their services knowing they had no intention of conducting a thorough review of THC's existing corporate governing documents but instead relied on information provided to them by the KC Group. ECF No. 15 at 20. THC alleges Defendants neither asked Mullenix, nor reached out to other board members of THC for the existing corporate documents, including Niemann, the board member and attorney who drafted the existing THC governing documents. ECF No. 15 at 5-8. THC's alleged damages include the loss of funds it paid to the Defendants for agreed-upon legal services which were never provided, additional damages paid to others to fix the issues created by Defendants' services, and costs associated with attempts to recover from Defendants' fraudulent actions

THC argues this misrepresentation caused harm to THC because it retained Defendants in reliance on the representation and suffered pecuniary losses because it never received the promised services. "When the misrepresentation concerns a statement of intent as to future performance or events, the plaintiff must establish that at the time the statement was made the speaker did not intend to perform the act represented." *Stevens v. Markirk Constr. Co.*, 454 S.W.3d at 881 (citing *Renaissance Leasing, LLC*, 322 S.W.3d at 133). This is required because a state of mind or intent is a fact for the purposes of fraudulent misrepresentation. *Id.* (citing *White v. Mulvania*, 575 S.W.2d 184, 188 (Mo. 1978)). "The scienter required to be shown for a misrepresentation of a future event is higher than that required to prove misrepresentation of an existing fact. The plaintiff must prove the defendant actually knew, when making the representation as to a future event or act, that the representation was false." *Id.* THC has alleged this scienter requirement, and the alleged fraudulent misrepresentation is sufficient to stand at this stage of the proceeding.

THC also claims Defendants had a duty to disclose the conflict of interest caused by its representation of the KC Group. THC alleges Defendants intentionally did not disclose this conflict, despite knowing they had a duty to do so. Defendants counter that their advice to the KC Group was not directly adverse to THC's interest because a volunteer's understanding of their control does not harm the organization.

"In nondisclosure cases, a party's silence amounts to a representation where the law imposes a duty to speak." *Hess v. Chase Manhattan Bank, USA N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (citing *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. 1993)). According to the Missouri Rules of Professional Conduct, an attorney may not represent a client if the representation involves a concurrent conflict of interest. Mo. S. Ct. R. 4-1.7(a). A concurrent conflict of interest occurs either when "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." *Id.* Rule 4-1.7(b) allows representation notwithstanding a current conflict of interest if four conditions are met, including the written informed consent of each client.

Rule 4-1.13(e) allows a lawyer representing an organization to also represent any of its directors, officers, employees, members, shareholders, or other constituents; however, such representation is subject to the provisions of Rule 4-1.7. If the organization's consent to the dual representation is required by Rule 4-1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented or by the shareholders. Mo. S. Ct. R. 4-1.13.

Rule 4-1.7(1) is at issue in the instant case. The First Amended Complaint alleges Defendants represented the KC Group concerning "any decision-making authority and control they may have in connection with their decision to volunteer for THC." ECF No. 15 at 6. THC alleges it expressly advised Defendants before and during the representation of its goal of assuring Mullenix remained in control of THC. Defendant Andrew Logan advised THC, through Mullenix, that there was nothing in the new bylaws that would allow the KC Group to "wrest control of THC from her or force her out of THC," and "there was no possibility of any volunteers, including but not limited to the KC Group, of using the Logan Bylaws to try to remove Mullenix or to otherwise wrest control and management of THC from Mullenix." *Id.* at 8, 18. The First Amended Complaint further alleges that the KC Group thereafter "threatened to remove Mullenix from management of THC based solely upon their purported authority pursuant to the terms of the Logan Bylaws." *Id.* at 9. The allegations concerning the representation of both the KC Group and THC under Mullenix's leadership appear to be sufficient to claim a concurrent conflict of interest over the issues of control and management of THC which would have legally required Defendants to disclose the representation of the KC Group, which Defendants allegedly failed to do.

Defendants next argue Count II does not meet the pleading standards of Fed. R. Civ. P. 9(b), which requires when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "When pleading fraud, a plaintiff cannot simply make conclusory allegations." *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997) (citing *Com. Prop. Invs., Inc. v. Quality Inns Int'l,* 61 F.3d 639, 644 (8th Cir.1995)). The Eighth Circuit has listed several factors a court should consider when determining whether the "circumstances"

constituting fraud are stated with particularity under Rule 9(b). *Id.* These factors include "the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud." *Id.* (citing *Com. Prop. Invs., Inc.*, 61 F.3d at 644). "This higher degree of notice 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir. 2006)).

Defendants rely on *Estate of Byas v. Wells Fargo Home Mortgage*, No. 4:19 CV 257 RWS, 2020 WL 7240352 (E.D. Mo. Dec. 9, 2020) and *Freitas v. Wells Fargo Home Mortgage, Inc.*, 703 F.3d 436 (8th Cir. 2013) in their argument that THC has not sufficiently met the rule of particularity under Rule 9(b). In *Estate of Byas*, the court found "Plaintiffs do not allege any specific facts about the nature of the fraud. They do not even include specific allegations as to each Defendant. Accordingly, this claim will be dismissed." 2020 WL 7240352 at *4. However, *Estate of Byas* is distinguishable from this case on the grounds that the defendants in *Estate of Byas* constituted three different corporations, whereas in the case at bar, Defendant Andrew Logan is named as a defendant acting as an employee of Defendant Logan Logan & Watson.

In *Freitas*, the plaintiff's complaint alleged various Wells Fargo representatives assured the plaintiffs they would qualify for a loan modification but did not allege which Wells Fargo representatives made the representations. *Freitas*, 703 F.3d at 437-38. Noting the complaint did not "identify the Wells Fargo employees alleged to have made the representations," and finding the plaintiffs had sufficient information to "'state with peculiarity'" the circumstances of the representations, the court held the plaintiffs did not meet the heightened pleading standard articulated in Rule 9(b). *Id.* 439-40 (internal citation omitted).

Read in its entirety, the First Amended Complaint alleges Defendant Victor Logan, acting in the course of his employment with Logan Logan & Watson, made the alleged misstatements as to his intention to review all of THC existing governing documents as a part of the attorney's services. He is also alleged to have failed to disclose the conflict of interest created by the representation of the KC Group and THC. These statements were allegedly made in October and November of 2017 at the office of Logan Logan & Watson in Johnson County, Kansas. The First Amended Complaint satisfies the pleading requirements of Rule 9(b).

Therefore, the Court denies Defendants' motion to dismiss with respect to Count II, as to THC's claims regarding Defendants' statements about the review of existing corporate documents and the alleged conflict of interest. The Court grants Defendants' motion to dismiss as to THC's claims regarding Defendants' expertise.

### C.  Count III - Negligent Misrepresentation

In Count III, THC alleges Defendants made false statements which largely parallel the claims raised in Count II as fraudulent misrepresentations. THC alleges Defendants falsely stated their level of expertise and their keen eyes for detail; falsely stated Defendants would conduct a thorough review of all of the THC's then existing governing documents to ensure compliance with Missouri law; falsely represented that the new bylaws ensured Mullenix would remain in control of THC; and failed to disclose a conflict of interest based on their representation of the KC Group. In Count III, THC alleges negligent misrepresentation, rather than fraudulent misrepresentation, claiming Defendants' failed to exercise reasonable care in obtaining, analyzing, and communicating this information. Defendants again argue THC did not plead facts to show Defendants negligently made false statements of fact actionable under Missouri law.

Defendants also claim THC failed to allege specific facts as required by the heightened pleading standard of Fed. R. Civ. P. Rule 9(b).

To state a claim for negligent misrepresentation, Missouri courts require a plaintiff to plead facts supporting each of the following elements:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss.

*Renaissance Leasing, LLC*, 322 S.W.3d at 134 (quoting *Dancin Dev., L.L.C. v. N.R.T. Mo., Inc.*, 291 S.W.3d 739, 744 (Mo. Ct. App. 2009)). "A party must prove every element of a negligent misrepresentation claim to succeed." *Id.* (internal citation omitted).

The Court's analysis of the alleged actionable false statements is very similar to its analysis of the allegations in Count II. THC's claims regarding Defendants stating they were experts or had a keen eye for detail are representations constituting mere expressions of opinion, or "puffing" which are not actionable representations. *Midwest Printing*, 108 F.3d at 170. However, the representation that Defendants would conduct a thorough review of all of THC's then existing governing documents, while having no intention to review those documents, raises an actionable misrepresentation. The allegation that Defendant Andrew Logan represented that the new bylaws ensured Mullenix would remain in control of THC, and the allegation that Defendants had a duty to disclose the representation of the KC Group on a related matter, but did not make such a disclosure, are also actionable misrepresentations.

Finally, Defendants contend Rule 9(b) applies to the negligent misrepresentation claim because it is grounded in fraud. However, this issue is not well settled. *See Allen v. Wright Med. Tech., Inc.*, No. 4:21-CV-01444-SEP, 2022 WL 4181793 *2 (E.D. Mo. Sept. 13, 2022) ("There

23

is conflicting precedent among federal courts as to whether Rule 9(b) applies to claims for negligent misrepresentation, but the Eighth Circuit does not require district courts to apply Rule 9(b) to such claims, and the trend in this District is to analyze claims for negligent misrepresentation under the general pleading requirements of Rule 8(a)."). *See also In re Nationsmart Corp. Sec. Litig.,* 130 F.3d 309, 315 (8th Cir. 1997) ("The only consequence of holding Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be stripped from the claim. The allegations of innocent or negligent misrepresentation . . . would survive.").

With respect to the negligent misrepresentation claims in the present case, the Court notes the attorney named as a defendant only had two years of experience practicing law and may have simply failed to exercise reasonable care when advising THC and in determining the potential conflict of interest. He is alleged in Count III as acting negligently, rather than fraudulently. Given the Eighth Circuit and this Court's trend toward analyzing negligent misrepresentation claims under the general pleading requirements of Rule 8(a), the Court is unwilling to extend Rule 9(b) in the instant case. Nevertheless, the Court's finding that Count II survived Rule 9(b) would equally apply to Count III's ability to state an actionable claim under Rule 9(b). THC has pleaded sufficient facts to overcome Defendants' motion to dismiss all of the allegations in Count III.

Therefore, the Court grants Defendants' motion to dismiss Count III as to THC's claims of Defendants' expertise, and denies the motion to dismiss its remaining claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 18) is **GRANTED** as to Count I, **without prejudice.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 18) is **GRANTED, in part,** and **DENIED, in part** as to Counts II and III.

So Ordered this 13th day of January, 2023.

**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**